**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DWIGHT WOODS**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 09-6870**

**GLEN BOOTY, WARDEN**                              **SECTION "R"(6)**


**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DENIED.**

## I. PROCEDURAL HISTORY[1]

Petitioner, Dwight Woods, is a prisoner presently incarcerated in Avoyelles Detention Center, located in Marksville, Louisiana.  Petitioner was charged by bill of information with one count of armed robbery, a violation of La. R.S. 14:64, and pled not guilty.  He waived his right to a jury trial and, following a bench trial on March 14, 2006, in the Thirty-Second Judicial District Court for the Parish of Terrebonne, was found guilty of the responsive offense of first-degree robbery, a violation of La. R.S. 14:64.1.  Petitioner moved for a new trial and for a post-verdict judgment of acquittal, but the motions were denied.  Petitioner was sentenced to twelve (12) years at hard labor without benefit of parole, probation, or suspension of sentence.  Petitioner moved for a reconsideration of the sentence, but the motion was denied.

On December 21, 2007, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction and sentence.  *State v. Woods*, 2007 WL 4480679, No. 2007-KA-1281 (La. App. 1 Cir. Dec. 21, 2007).  On September 18, 2009, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final. *State ex rel. Woods v. State*, 17 So.3d 391 (La. 2009).

---

[1]The procedural history was taken for the Louisiana First Circuit Court of Appeal's decision, *State v. Woods,* 2007 WL 4480679, No. 2007-KA-1281 (La. App. 1 Cir. Dec. 21, 2007).

Following the completion of his direct appeal proceedings, petitioner, on September 18, 2009, filed the instant federal habeas corpus application raising as his sole claim for relief that there was insufficient evidence to support his conviction.  The State concedes that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  (Rec. doc. 9, p. 5).  Further, the State does not contest the timeliness of the instant action and this court's review reflects that petitioner's habeas application is timely.   Accordingly, the court shall review the pertinent facts and standard of review, then proceed to address the merits of petitioner's insufficiency of evidence claim.

## II.  FACTS[2]

On June 1, 2005, Jamesha Howard was working as the night manager of Whataburger in Houma.  She was eight months pregnant.  At approximately 2:30 a.m. or 2:45 a.m., she began feeling ill and decided to go home.  As she opened her car door after parking her car at the apartment complex where she lived, a man put a gun to the left side of her head. She screamed, and the man threatened to kill her if she screamed again.  The man told her to give him her purse and to close her car door.  The victim complied with the man's demands, and he left with her purse containing $4, her checkbook, her bankcard, and her medicine.

---

[2]The above facts are adopted from the Louisiana First Circuit Court of Appeal's decision, *State v. Woods*, 2007 WL 4480679, No. 2007-KA-1281 (La. 1 Cir. Dec. 21, 2007).

On June 10, 2005, the victim's purse was recovered in a ditch approximately two or three miles from the scene of the robbery.  The victim indicated the purse no longer contained any cash or medicine, and she believed her checkbook or bankcard also was stolen.

The victim indicated the robber had the top of his face covered with a T-shirt. She conceded the lighting in the area was "not very good at all[,]" but stated there was a light directly over her parking place.  At the time of the robbery, she described the robber as a black male with a mustache, 5'8" tall, weighing approximately 160 or 170 pounds.  She described the man's gun as a black "handheld" gun, but did not know whether or not the gun was real.  She identified the petitioner at trial as the robber.

After losing consciousness for some time, the victim went to her apartment and reported the robbery to the police.  She was terrified and hysterical.  She told the police she thought the robber was a man (not the petitioner) who lived in the apartment complex next door to the apartment complex where she lived.  Later that day, she went to the emergency room because she was scared and her blood pressure "kind of dropped."

A few days after the robbery, the victim saw the petitioner in the apartment complex where she lived and recognized him as a man she had spoken to at the complex before, but knew only as "Meanie."  The victim confronted the petitioner and asked him if he had robbed her.  The petitioner denied robbing the victim and told her that he had "a bunch of brothers that look[ed] like [him]."  Kathleen Ronquillo then approached the victim

4

and asked if she was sure the petitioner was the robber.  Ronquillo stated that the petitioner "didn't mean" to rob the victim and "that neither one of them knew where they were at, at the time, anything."

The victim denied that she did not name the petitioner as the robber until she received "other information" from Courtney Nixon.  The victim indicated Nixon told her the petitioner's real name and that he had been bragging that he robbed a pregnant girl in the parking lot.  The victim conceded that she spoke to Nixon prior to seeing the petitioner at the apartment complex.

Houma Police Detective Dana Tyrone Coleman spoke to the petitioner after he was taken to the police station on a charge unrelated to the robbery.  After the petitioner signed an advice of rights/waiver of rights form, Detective Coleman asked him if he had any idea what the detective wanted to talk to him about.  The petitioner initially denied any knowledge of the robbery.  He then claimed he had knowledge that a female was robbed and he heard that approximately $4 was taken from her.  He had no explanation for how he knew about the robbery.  Subsequently, he stated that he and one of his girlfriends, Kathy Ronquillo, were walking in the area of 1406 Acadian and observed a white female pulling into the driveway of the apartment complex.  The petitioner claimed he fired a paintball gun at the female "a couple of times," and she gave her purse to him.

The State introduced into evidence the petitioner's June 29, 2005 statement, typed by Detective Coleman.  Therein, the petitioner claimed he fired a paintball gun, making loud air sounds, at a lady pulling into the apartment complex near the Houma Tunnel.  The petitioner claimed the lady "yelled" and dropped her purse, and he "picked up" the purse.  The petitioner claimed his girlfriend, Ronquillo, tried to return the purse to the lady, but she threw it on the ground and he and Ronquillo took the purse with them when they left the area.

Detective Coleman indicated that attempts to contact Nixon and Ronquillo were unsuccessful.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has

noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations

omitted).

> As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### Insufficiency of Evidence

> Petitioner complains that the evidence produced by the State was insufficient to support his conviction.  Specifically, petitioner asserts that there was insufficient evidence

identifying him as the robber because the victim initially named someone else, a person who lived in the apartment complex next to her complex, as the person who robbed her.

In addressing the instant claim on direct appeal, the Louisiana First Circuit Court of Appeal first examined applicable law as enunciated by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), along with applicable state law.

> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded.  Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification.  Positive identification by only one witness may be sufficient to support the defendant's conviction. *State v. Wright,* 98-0601, pp. 2-3 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486-87, *writs denied,* 99-0802 (La.10/29/99), 748 So.2d 1157, 2000-0895 (La.11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).
>
> When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  *Wright,* 98-0601 at 3, 730 So.2d at 487.

*Woods*, 2007 WL 4480679, 2-3.

Next, the Louisiana First Circuit examined the elements of first-degree robbery, the crime for which petitioner was convicted.

> First-degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. La. R.S. 14:64.1(A).

> The first-degree robbery statute has objective and subjective components.  The State must prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances.  The statute thus excludes unreasonable panic reactions by the victim, but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of La. R.S. 14:65.  Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first-degree robbery. *State v. Caples,* 2005-2517, pp. 4-5 (La.App. 1st Cir.6/9/06), 938 So.2d 147, 151, *writ denied,* 2006-2466 (La.4/27/07), 955 So.2d 684.

*Woods*, 2007 WL 4480679, 3.

Thereafter, the court concluded:

> After a thorough review of the record, we are convinced the evidence, viewed in the light most favorable to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of first-degree robbery and the defendant's identity as the perpetrator of that offense.  The victim explained why she initially thought the robber was someone who lived in the apartment complex next to the apartment complex where she lived, i.e., because that person was "always outside at that time."  She also explained she was shaken from the robbery.  At trial, she testified she was "positive" the defendant was the person who had robbed her.  In addition to recognizing the bottom half of the defendant's face, she also recognized his voice.  In reviewing the evidence, we cannot say that the fact

finder's determination that the defendant was the robber is irrational under the facts and circumstances presented to him. *See State v. Ordodi,* 2006-0207, p. 14 (La.11/29/06), 946 So.2d 654, 662. Further, even in the defendant's self-serving account of the incident, the victim surrendered her purse in response to the defendant's firing of a paintball gun at her. Once the crime itself has been established, a confession alone may be used to identify the accused as the perpetrator. *State v. Carter,* 521 So.2d 553, 555 (La.App. 1st Cir.1988).

This assignment of error is without merit.

*Woods,* 2007 WL 4480679, 3-4.

This court finds that the above reasoning on the part of the Louisiana First Circuit does not represent an unreasonable application of the law enunciated in *Jackson*, *supra*, to the facts of this case. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Dwight Woods, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  28 U.S.C. §636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[3]

New Orleans, Louisiana, this __15th__ day of ___November___, 2010.

LOUIS MOORE, JR.

United States Magistrate Judge

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.

11